JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Daniel McBride and Oxford House, Inc.

(b) County of Residence of First Listed Plaintiff: Monmouth, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Melissa A. Geist, Reed Smith, LLP
136 Main St., Ste. 1250, Princeton, NJ 08450

## DEFENDANTS
The Franklin Mutual Insurance Company and Certain Underwriters at Lloyd's London

County of Residence of First Listed Defendant: Sussex, NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. S 3601 et Seq. and S. 12181 et Seq.

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Declaratory Judgment
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____
DOCKET NUMBER _____

DATE: August 16, 2006
SIGNATURE OF ATTORNEY OF RECORD: /s/ Melissa A. Geist

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Melissa A. Geist, Esq.
**REED SMITH LLP**
136 Main Street, Suite 1250
Princeton, NJ 08540
Telephone: 609.987.0050

Gary Thompson, Esq.
Michael Raibman, Esq.
**REED SMITH LLP**
1301 K Street, N.W., Suite 1100 - East Tower
Washington, D.C. 20005-3373
Telephone: 202.414.9200

Robert Bruskin, Esq.
Isabelle Thibault, Esq.
**WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS**
1300 19th Street, N.W., Suite 500
Washington, D.C. 20036
Telephone: 202.835.0031
Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL MCBRIDE<br>707 Beach Ave.<br>Bradley Beach, NJ 07720<br><br>and<br><br>OXFORD HOUSE, INC.<br>1010 Wayne Avenue, Suite 400<br>Silver Spring, MD 20910,<br><br>      Plaintiffs,<br>v.<br><br>THE FRANKLIN MUTUAL INSURANCE<br>COMPANY<br>5 Broad Street<br>P.O. Box 400<br>Branchville, NJ 07826,<br><br>and<br><br>CERTAIN UNDERWRITERS AT LLOYD's,<br>LONDON<br>One Lime Street<br>London, England EC3M 7HA<br><br>      Defendants. | CIVIL ACTION NO.<br><br><br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY<br>JUDGMENT,<br>PERMANENT INJUNCTIVE RELIEF<br>AND DAMAGES** |

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination, on the basis of handicap, in the provision of insurance services in connection with the rental of housing. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.* (the "FHA"), and Title III of the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12181 *et seq.* (the "ADA").

2.      Daniel McBride owns two "single-family" zoned homes that are rented to and occupied by persons with disabilities. They are both "Oxford Houses," which are residential homes for those in recovery from alcohol or drug addiction. The Oxford House model provides mutual support and encouragement for such individuals, who are prohibited from any alcohol or drug use. Such individuals in recovery from addiction are "handicapped" within the meaning of the FHA and ADA, and as such, are protected by such laws against discrimination.

3.      Mr. McBride must carry standard homeowners insurance in order to protect against casualty (such as fire) and liability (such as personal injury suits), and also as required by his mortgage lender. Defendant Franklin Mutual Insurance Company ("Franklin") insured the two homes for years. However, on May 12, 2006, based on the fact that these are Oxford Houses occupied by persons with disabilities, Franklin cancelled the insurance policies.

4.      Franklin has refused to reverse its cancellation decision. Franklin cites its "family eligibility rule" that no more than two "families" (which is undefined) can occupy a home. This rule is illegal under the FHA and ADA, including as applied by Franklin to these two homes. Further, Franklin has violated the law by refusing to provide a "reasonable accommodation" or exception to its eligibility rule as applied to these two homes.

5.      As a result of Franklin's cancellation, Mr. McBride was forced to obtain a new insurance coverage policy. Defendant Certain Underwriters at Lloyd's London ("Lloyd's") issued a new policy for the two homes, but at double the former premium due to Lloyd's insistence that the Oxford Houses be classified as a "commercial" use. Lloyd's violated the FHA and ADA by charging a higher premium than they would otherwise charge for a standard

residential policy, and by refusing to provide a reasonable accommodation to its policy.

## JURISDICTION AND VENUE

6. Jurisdiction in this action is predicated on 42 U.S.C. § 3613, 42 U.S.C. §§ 12188(a) and 2003a-3(a), and 28 U.S.C. § 1331.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) in that the claims arose in this district and the Defendants conduct business in this district.

## PARTIES

8. Plaintiff, Daniel McBride, presently resides at 707 Beach Avenue, Bradley Beach, New Jersey 07720. He is the owner of two "single-family" zoned homes: one located at 18 Laurel Court, Howell, New Jersey 07731 (the "Laurel Court home"), and one at 24 West Ridge Road, Toms River, New Jersey 08755 (the "West Ridge Road home"). As further detailed below, the Laurel Court and West Ridge Road homes are currently rented by individuals who are considered handicapped under the FHA and ADA. The tenants are recovering alcoholics or drug addicts who are no longer using such substances. They live together as a family unit under the rules and guidance of the "Oxford House" program.

9. Plaintiff, Oxford House, Inc. ("Oxford House"), is a not-for-profit corporation organized under the laws of the state of Delaware, with its principal place of business at 1010 Wayne Avenue, Suite 400, Silver Spring, Maryland 20910. As further detailed below, Oxford House assists individuals and groups nationwide in establishing housing for recovering alcoholics and drug addicts, who are considered handicapped under the FHA and ADA.

10. Upon information and belief, Defendant, The Franklin Mutual Insurance Company ("Franklin") is a corporation organized under the laws of New Jersey, with its headquarters and principal place of business at 5 Broad Street, P.O. Box 400, Branchville, New Jersey 07826.

11. Upon information and belief, Defendant, Certain Underwriters at Lloyd's, London ("Lloyd's") is a foreign corporation with its headquarters and principal place of business at One Lime Street, London, England, EC3M 7HA. Lloyd's surplus lines broker in New Jersey is

Atlantic States Group, Inc. of Vincetown, NJ.

## FACTUAL BACKGROUND

12. There are hundreds of "Oxford Houses" nationwide, and over 65 Oxford Houses in New Jersey. With the support of Oxford House, Inc., an Oxford House is a home rented by a group of individuals in recovery from alcoholism and/or drug addiction. Such individuals are considered "handicapped" or "disabled" within the meaning of the FHA and the ADA. Handicapped Oxford house tenants live together in a shared arrangement and provide each other with mutual support and encouragement for the purpose of remaining drug and alcohol free.

13. In accordance with the "Oxford House" concept, such handicapped individuals reside together as the functional equivalent of a family. The houses are financially self-supporting and democratically run. Anyone who uses drugs or alcohol, inside or outside of the house, is immediately expelled. There are no paid staff, counseling, therapy, or house managers involved in the operation of the houses. There are no other institutional personnel involved in the supervision or management of the houses. The residents live in the houses as any other group of unrelated persons functioning as a single household unit. Under zoning and other applicable laws, the houses are "single-family" dwellings.

14. In 2002, Plaintiff Daniel McBride purchased the Laurel Court home. Under zoning and other applicable laws, the home is a "single-family" dwelling.

15. When Mr. McBride bought the Laurel Court house it was under a lease with an Oxford House group known as Oxford House-Howell, an affiliate of Oxford House, Inc. Mr. McBride chose to honor the lease and thereafter continued to renew the lease.

16. In May 2005, Mr. McBride purchased the West Ridge Road home. Under zoning and other applicable laws, the home is a "single-family" dwelling.

17. Following the purchase, Mr. McBride rented the West Ridge Home as an Oxford House to a group known as Oxford House-West Ridge, an affiliate of Oxford House, Inc.

18. Neither Oxford House-Howell nor Oxford House-West Ridge used the homes for any commercial or business purposes. Rather, the homes were and are used as a residence in

accordance with the Oxford House model described above.

19. As an owner-landlord, Mr. McBride purchased homeowners insurance for the two homes. He obtained a "Combination Dwelling Policy" from Franklin for each home – one for Laurel Court, and one for West Ridge Road. In his application for or renewal of the policies, he did not note that the tenants are disabled, as this is not a material fact in such an application and it is illegal for a homeowners insurer to discriminate on the basis of disability.

20. For Laurel Court, he purchased a Franklin Combination Dwelling Policy for the period of February 10, 2005 to February 10, 2006, at a premium of $1,087 (Policy No. CDP2841671). The policy included coverage for loss due to both casualty and liability.

21. Mr. McBride renewed Franklin Policy No. CDP2841671 for the Laurel Court house for another year at a premium of $1,148.

22. For West Ridge Road, Mr. McBride obtained a "Combination Dwelling Policy" from Franklin for the period of April 4, 2005 to April 4, 2006, at a premium of $1,026 (Policy No. CDP2844541). The policy included coverage for loss due to both casualty and liability.

23. In March 2006, Mr. McBride renewed Franklin Policy No. CDP2844541 for the West Ridge Road house for another year at a premium of $1,083.

24. Back in November 2005, Mr. McBride had suffered fire damage to another house he owned at 1185 Bay Avenue, Toms River, New Jersey, 08753 (the "Bay Avenue" home), which was rented to Oxford House Bay Avenue, an affiliate of Oxford House, Inc. Lloyd's provided the insurance for the Bay Avenue home.

25. All three insurance policies had been placed through the same agency, the Carl W. Swensen Agency, Inc. ("Swensen Agency") in Toms River, New Jersey.

26. In the course of its investigation into the fire incident, Lloyd's noted that the Bay Avenue home was rented to individuals with disabilities living as an Oxford House family. Initially, Lloyd's refused to cover the loss because the home had been rented as an Oxford House, and in March 2006, cancelled the policy for the Bay Avenue home.

27. At about the same time in March 2006, the Swensen Agency informed Franklin

- 5 -

that the other two homes owned by its client, Mr. McBride, were likewise occupied by Oxford House tenants with disabilities. This induced Franklin to decide to send cancellation notices for the Laurel Court and West Ridge Road homes.

28. On or about April 10, 2006, the Swensen Agency wrote to Mr. McBride and informed him that Franklin would be canceling his policies.

29. On or about April 12, 2006, for each home, Franklin sent to Mr. McBride a notice of cancellation of the policy, to be effective as of May 12, 2006. Franklin characterized the occupancy of the homes by persons with disabilities as a "material change in the risk." Franklin purported to justify its cancellation by claiming that the homes were "no longer used as a one family residence." Franklin's specific reason for characterizing the homes in such fashion was the fact that they were occupied by disabled individuals living together in an Oxford House or "group home" situation.

30. Franklin did not offer Mr. McBride a replacement policy for either house.

31. On or about April 18, 2006, Mr. McBride, through counsel, filed a complaint with the State of New Jersey Department of Banking and Insurance, Division of Enforcement and Consumer Protection. He contested the cancellation of his two policies by Franklin because the tenants of the Laurel Court and West Ridge Road homes were and are handicapped individuals. As stated therein, the dwellings have always been and continue to be used as a single family dwelling, and he complained that Franklin cancelled the policies because the homes were being used as Oxford Houses. The pertinent sections of the FHA and ADA were cited.

32. On or about April 28, 2006, Mr. McBride, through counsel, further requested restoration of the Franklin policies, citing the fact that Franklin's actions were contrary to the FHA and ADA, as explained therein. In accordance with the cancellation notices and the law, copies of all documents relating to the cancellation decision were requested from Franklin.

33. Mr. McBride further requested, through counsel, that Franklin make a "reasonable accommodation" in the application of its rules, policies, and practices as they pertain to groups of unrelated disabled persons who reside in and use a single family dwelling for its intended

purposes.

34. On or about May 1, 2006, Franklin wrote to counsel for Mr. McBride and confirmed that their cancellation decision resulted from having been informed by the Swensen Agency that the "dwelling[s] w[ere] being rented to The Oxford House, a non-profit organization. The occupants were multiple non-family persons rather than a family unit as stated on the application." Franklin did not offer any definition of "family unit." Nor did Franklin indicate that where a home is not occupied by a "family," if the occupants are handicapped within the meaning of the law, that Franklin will recognize a "reasonable accommodation" or other exception to its policy.

35. Franklin quoted a "general eligibility" requirement for its Combination Dwelling Program as: "Insurance here is limited to: 1 to 4 family dwellings; apartments, condominiums or co-op apartments. No premises may have more than either one additional family or 2 lodgers per unit." The Franklin "family" eligibility requirements do not offer any consideration or accommodation for tenants with disabilities living together in a "group home" situation such as Oxford House.

36. On or about May 8, 2006, Franklin forwarded its May 1, 2006 letter to the State of New Jersey, purportedly to respond to the complaints filed regarding the cancellation of the two policies. Franklin gave no further explanation, and provided no documents regarding the decision. Franklin did not consider the request for a "reasonable accommodation," and gave no sign that it even has a "reasonable accommodation" policy or process in place to consider such requests.

37. Franklin states that its "family" eligibility requirement was "the only reason for cancellation." However, Franklin's eligibility requirement is illegal because it does not allow for any exception or accommodation in the case of occupancy by persons with disabilities. Moreover, the eligibility requirement is illegal because it has a disparate impact on those with disabilities, who tend to need to live in "group home" situations outside of the traditional "family" relations. Moreover, on information and belief, Franklin does not apply or enforce its

- 7 -

eligibility requirement, including in the application and premium collection process. To the extent Franklin does so, it applies the requirement only in a discriminatory fashion where the home is one like an Oxford House. This was the case with respect to the Laurel Court and West Ridge Road homes.

38. Franklin has intentionally ignored the developments in the FHA and ADA law. It is well-settled that the FHA and ADA apply to insurers like Franklin, and that Franklin cannot legally enforce its "family" eligibility requirement to exclude from coverage a home for persons with disabilities. Franklin knew or should have known of this legal precedent, but instead, intentionally applied its eligibility requirement in an illegal and discriminatory fashion.

39. On or about May 8, 2006, upon reconsideration and specifically because of the "unique status" of the Oxford House and its disabled occupants, Lloyd's rescinded its cancellation of Mr. McBride's Bay Avenue home policy and accepted coverage for the Bay Avenue fire loss. Lloyd's acknowledged that an Oxford House, due to the handicapped occupants, warrants an accommodation from what might otherwise be the effect of an insurance eligibility requirement.

40. Franklin, however, did not rescind its cancellation of Mr. McBride's Laurel Court and West Ridge Road homes.

41. As a result of Franklin's actions, Mr. McBride was pressed, with little time, to find replacement insurance coverage for the two houses. Mr. McBride contacted a number of different insurers, but he was unable to replace the cancelled insurance in the standard, licensed insurers' market. Therefore, Mr. McBride was forced to seek a replacement policy for the two homes in the secondary, "excess and surplus" insurers' market.

42. Eventually, Mr. McBride obtained an insurance policy for the two houses from Lloyd's, the same insurer for his Bay Avenue home. In this case, however, Lloyd's insisted on charging a higher, commercial rate due to the occupancy as an Oxford House.

43. On or about May 10, 2006, Lloyd's quoted Mr. McBride an annual premium for the two houses, $4,118.35, that was significantly higher than the amount Mr. McBride had been

paying under his previous policies with Franklin. The policy for both homes was Mr. McBride's only choice short of having no insurance, so he purchased it. Lloyd's forced Mr. McBride to pay almost double the rate for standard landlord insurance coverage because the house was being rented by individuals with disabilities.

44. Moreover, rather than a standard $500 deductible he had been paying under his policy with Franklin, Mr. McBride was forced to accept a $1,000 deductible for "all perils" and a $2,500 for any "water damage."

45. On or about May 16, 2006, the State of New Jersey wrote to Franklin and (in response to Franklin's letter of May 8, 2006) requested a supplemental response by June 2, 2006, specifically to answer the FHA and ADA questions and case law raised by Mr. McBride's counsel.

46. Waiting until June 19, 2006, Franklin submitted a supplemental report to the investigator in charge of Mr. McBride's complaint to the State of New Jersey. Franklin did not address the FHA, ADA, or case law addressed by Mr. McBride's counsel. Rather, Franklin merely repeated that it cancelled the insurance for the Oxford Houses because they do "not meet the guidelines of our Combination Dwelling Program. Dwellings which are acceptable include one or two family tenant occupied" homes. Franklin ignores the fact that such a requirement, as applied to an Oxford House *occupied by persons with disabilities*, is illegal, as expressly declared by FHA and ADA precedent. Franklin refuses to consider any accommodation to its requirement in the case of persons with disabilities.

47. Franklin suggested that it could offer replacement insurance to Mr. McBride only under its "Business-owners Program or Commercial Package Policy Program." These commercial policies would require Mr. McBride to pay significantly higher premiums than other single-family homeowners because he chooses to rent his single-family home to handicapped individuals.

48. Franklin's past, present, and continuing refusal to make any reasonable accommodation in its rules, policies, practices, or services necessary to afford the handicapped

- 9 -

residents equal opportunity to use the dwellings at Laurel Court and West Ridge Road demonstrate that Franklin has a longstanding and over-arching policy of discrimination within the meaning of the FHA and ADA.

49. Lloyd's present and continuing discriminatory practice of charging Mr. McBride almost double the standard premiums for landlord insurance coverage because he rents the houses to individuals with disabilities is prohibited by the FHA and ADA.

50. As a result of Defendants' actions described above, Plaintiffs have each suffered out-of-pocket damages.

51. Mr. McBride has suffered monetary damages by having to pay premiums higher than what he would have paid had Defendants not acted in an unlawful manner.

52. In addition to ongoing monetary losses incurred as a result of the increased premium payments, the discriminatory actions of Defendants have caused Mr. McBride to suffer mental anguish, distress, and frustration. Mr. McBride has also suffered and continues to suffer frustration, distress, and anguish as a result of his time-consuming search for replacement insurance polices for the two dwellings.

53. Oxford House has assisted and continues to assist with the implementation of the standard system of operations of the Oxford Houses located at Laurel Court and West Ridge Road.

54. Oxford House has suffered and continues to suffer out-of-pocket damages as a result of its need to devote some of its scarce resources to identify and counteract Defendants' unlawful actions.

55. Defendants' discriminatory actions, as described above, have injured Oxford House through its affiliates in Howell and Toms River, New Jersey. In addition, Defendants' actions have (1) interfered with all the efforts and programs of Oxford House and its affiliates; (2) forced Oxford House and its affiliates to devote scarce resources to identify and counteract Defendants' unlawful practices and activities; and (3) interfered with the fair housing rights of Oxford House and its affiliates.

56. As a result of Defendants' unlawful actions described above, Plaintiffs have also each suffered, continue to suffer, and will continue to suffer irreparable loss and injury including, but not limited to a deprivation of rights to equal housing opportunities, humiliation, embarrassment, mental anguish, emotional distress, frustration, and frustration of purpose for Oxford House and its affiliates.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE FAIR HOUSING ACT OF 1968

57. Plaintiffs repeat the allegations of all of the above paragraphs as if fully set forth herein.

58. Defendants' actions and practices described above violate the FHA.

59. In particular, Defendants' actions and practices described above constitute unlawful discrimination under 42 U.S.C. § 3604(f)(2), in that Defendants have discriminated against persons in the terms, conditions, or privileges of the rental of the Plaintiffs' properties, and/or in the provision of services or facilities in connection with such dwellings, because of the handicapped status of: (a) those persons who rent the home; (b) those persons who reside in or intend to reside in the home after it was rented or made available; or (c) those persons associated with the renters of the home.

60. Defendants' actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 3604(f)(1), in that Defendants' actions and practices have had the effect of making dwellings unavailable, and continue to do so, to the renters or residents of Plaintiffs' homes because of the handicapped status of: (a) those persons who rent the home; (b) those persons who reside in or intend to reside in the home after it was rented or made available; or (c) those persons associated with the renters of the home.

61. Defendants' unlawful actions and practices described above constitute an ongoing, continuing pattern or practice of discrimination under 42 U.S.C. § 3604(f). Defendants' continuing violation of the FHA is demonstrated by Defendants' present and

ongoing discriminatory activity outlined above.

62.  Defendants' unlawful actions and practices described above were, and are, intentional, willful, and implemented with callous and reckless disregard of the rights of the Plaintiffs and the handicapped residents under 42 U.S.C. § 3604(f). Defendants' actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles and risks associated with them.

63.  Defendants' actions were motivated by or based on consideration of the handicapped status of the residents of Plaintiffs' homes. On information and belief, Defendants do not have any actuarial or other such justification for their discriminatory treatment of Plaintiffs. Defendants' actions are a form of insurance "redlining" that is prohibited by 42 U.S.C. § 3604.

64.  Defendants' acts and practices also have a significant adverse impact upon handicapped persons. Defendants have relied upon the fact that the individuals occupying the homes were not a biological family to justify its cancellation of the insurance policies and their refusal to offer standard landlord insurance coverage at normal rates. These actions and policies of Defendants are overbroad and unnecessary to protect any legitimate interests of Defendants. These actions and policies discriminate against handicapped individuals, who are more likely to need supervision or assistance than persons without a handicap. Recovering alcoholics and drug addicts are more likely to need to reside together in the fashion of an "Oxford House" than a group of unrelated non-handicapped individuals.

65.  Defendants' acts and practices also constitute discrimination under 42 U.S.C. § 3604(f)(3)(B), in that Defendants have and continue to refuse to make any reasonable accommodations in their rules, policies, practices, or services that were and are necessary to afford the handicapped residents of Plaintiffs' dwellings the equal opportunity to use and enjoy the dwellings. 42 U.S.C. § 3604(f)(3)(B). Such reasonable accommodations, requested by Plaintiffs, include, but are not necessarily limited to, excepting or altering the policy of refusing to issue standard landlord insurance in any situation where the house is not occupied by a

biological family, but rather by unrelated, handicapped individuals (notwithstanding whether the house is a "single-family" dwelling under applicable zoning laws and used in a manner consistent with such designation).

66. Defendants could have made but refused to make any accommodation of any kind in their policies as applied to and as they affect handicapped individuals. Upon information and belief, the accommodations requested by Plaintiffs neither impose undue financial or administrative burdens on Defendants nor require a fundamental alteration in the nature of Defendants' insurance programs.

67. As a proximate result of Defendants' violations of the FHA, Plaintiffs have been injured, as detailed above.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990

68. Plaintiffs repeat the allegations of all of the above paragraphs as if fully set forth herein.

69. Defendants' actions and practices described above violate the ADA.

70. In particular, Defendants' actions and practices described above constitute unlawful discrimination under 42 U.S.C. § 12182(a), in that Defendants have discriminated against Plaintiffs, and the handicapped residents of the properties, on the basis of disability, with regard to the full and equal enjoyment of Defendants' goods, services, privileges, advantages, or accommodations.

71. Defendants' actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 12182(b)(1)(A)(i), in that Defendants have subjected an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

72. Defendants' actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 12182(b)(1)(A)(ii), in that Defendants have afforded an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

73. Defendants' actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 12182(b)(1)(A)(iii), in that Defendants have provided an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals.

74. Defendants' actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 12182(b)(1)(E) – discrimination based on association – in that Defendants have discriminated against Plaintiffs, by excluding or otherwise denying them, equal goods, services, privileges, advantages, accommodations, or other opportunities because of the known disabilities of the handicapped residents of Plaintiffs' properties, which residents Defendants knew to have a relationship or association with Plaintiffs. Such unlawful actions include (1) Defendants' cancellation of Plaintiffs' insurance policy because the residents of Plaintiffs' homes are handicapped; (2) Defendants' offer to issue Plaintiffs, because of the disabilities of the residents of Plaintiffs' homes, only their "commercial" or "business" policies, which have substantially higher premiums than standard landlord insurance policies; and (3) Defendants' discriminatory practice of charging Plaintiffs double the annual premium of standard landlord insurance policies because the residents of Plaintiffs' homes have disabilities.

75. Defendants' actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 12182(b)(2)(A)(i), in that Defendants have discriminated against Plaintiffs, and the handicapped residents of Plaintiffs' properties, through the imposition

or application of eligibility criteria that screen out or tend to screen out individuals with a disability from fully and equally enjoying Defendants' goods, services, privileges, advantages, or accommodations. Such unlawful actions include Defendants' application of eligibility criteria – including the cancellation of landlord insurance and offer of only "commercial" or "business" insurance where the homes are not occupied by a biological family – that tend to screen out Plaintiffs, because of the disabilities of the residents of Plaintiffs' homes, from the full and equal enjoyment of Defendants' insurance products.

76. Defendants' actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 12182(b)(2)(A)(ii), in that Defendants have failed to make reasonable accommodations in their policies, practices, or procedures, which modifications were and are necessary to afford Defendants' goods, services, privileges, advantages, or accommodations, to Plaintiffs and the handicapped residents of their properties. Such reasonable accommodations, requested by Plaintiffs, including but are not necessarily limited to, excepting or altering the policy of refusing to issue standard landlord insurance in any situation where the house is not occupied by a biological family, but rather by unrelated, handicapped individuals.

77. Upon information and belief, the accommodations requested by Plaintiffs would not fundamentally alter the nature of Defendants' good, services, privileges, advantages, or accommodations. Nor would the accommodations impose any undue financial or administrative burden on Defendants.

78. With respect to Plaintiffs or the handicapped residents of Plaintiffs' homes, Defendants do not administer any benefit plans within the meaning of 42 U.S.C. § 12201(c); but rather, Defendants provide casualty and liability insurance. In the alternative, Defendants' actions and practices described above constitute a "subterfuge" to evade the purposes of subchapter III of the ADA, within the meaning of 42 U.S.C. § 12201(c).

79. Defendants' unlawful actions and practices described above constitute an ongoing, continuing pattern or practice of discrimination under 42 U.S.C. § 12182.

80. Defendants' unlawful actions and practices described above were, and are,

intentional, willful, and implemented with callous disregard of the rights of Plaintiffs and the handicapped residents under 42 U.S.C. § 12182. Defendants' actions were, and are, motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles and the risks associated with them.

81. Defendants' unlawful actions and practices described above were, and are, motivated by or based on consideration of the disabilities of the residents of Plaintiffs' homes. Upon information and belief, Defendants do not have any actuarial or other such justification for their discriminatory treatment of Plaintiffs. Defendants' underwriting and classification of risks, with respect to Plaintiffs, were and are not based on sound actuarial principles and were and are not related to actual or reasonably anticipated experience. Defendants' actions are a form of insurance "redlining" that is prohibited by 42 U.S.C. § 12182.

82. As a proximate result of Defendants' violations of the ADA, Plaintiffs have been injured, as detailed above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

a) That the Court declare the actions of Defendants complained herein to be in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*, and Title III of the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12181 *et seq.*;

b) That Defendants, their agents, employees, and successors, be permanently enjoined from discriminating on the basis of handicapped status against any person in violation of the Fair Housing Act of 1968, as amended, or Title III of the Americans With Disabilities Act of 1990, as amended;

c) That Defendants be ordered to take appropriate affirmative actions to ensure that the activities complained of above are not engaged in again by them, including by reinstating or offering insurance to Mr. McBride on the same terms and at the same rates as would be offered for a home occupied by a "family" and otherwise within the eligibility guidelines;

d) That appropriate punitive and compensatory damages be awarded to Plaintiffs and

against Defendants;

    e)    That Plaintiffs be awarded its costs and reasonable attorney's fees in this action; and

    f)    That Plaintiffs be awarded such other further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), trial by jury is demanded on all issues.

Dated: August 16, 2006

Respectfully submitted,

/s/ Melissa A. Geist

Melissa A. Geist, Esq.
REED SMITH LLP
136 Main Street, Suite 1250
Princeton, NJ 08540
Telephone: 609.987.00

Gary Thompson, Esq.
Michael Raibman, Esq.
REED SMITH LLP
1301 K Street, N.W., Suite 1100 - East Tower
Washington, D.C. 20005-3373
Telephone: 202.414.9200

Robert Bruskin, Esq.
Isabelle Thibault, Esq.
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
1300 19th Street, N.W., Suite 500
Washington, D.C. 20036
Telephone: 202.835.0031

Counsel for Plaintiffs

## CERTIFICATION PURSUANT TO L.Civ.R. 11.2

I certify that to the best of my knowledge, information and belief the matter in controversy is not the subject of any other action pending in any court, or of any pending

- 17 -

arbitration or administrative proceeding.

Dated:  August 16, 2006

Respectfully submitted,

*/s/ Melissa A. Geist*

Melissa A. Geist, Esq.
REED SMITH LLP
136 Main Street, Suite 1250
Princeton, NJ 08540
Telephone:  609.987.00

Gary Thompson, Esq.
Michael Raibman, Esq.
REED SMITH LLP
1301 K Street, N.W., Suite 1100 - East Tower
Washington, D.C.  20005-3373
Telephone:   202.414.9200

Robert Bruskin, Esq.
Isabelle Thibault, Esq.
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
1300 19th Street, N.W., Suite 500
Washington, D.C. 20036
Telephone:   202.835.0031

Counsel for Plaintiffs